UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

SHAOXING BON TEXTILES CO., LTD,

                                        Plaintiff,

        - against -

4-U PERFORMANCE GROUP LLC, HOWARD
WEISS, SGM CORP., SGM LEASING, CORP.,
ABE MANELA, FOR YOU APPAREL LLC, and
PERFORMANCE GROUP USA, INC.

                                        Defendants.
-------------------------------------------------------------------x

Case No.: 16-cv-6805 (JSR)


**ANSWER TO SECOND
AMENDED COMPLAINT**

        Defendants 4-U PERFORMANCE GROUP LLC, HOWARD WEISS, SGM LEASING

CORP., also sued herein as SGM CORP., ABE MANELA, FOR YOU APPAREL LLC and

PERFORMANCE GROUP USA, INC. ("4-U" "Weiss", "SGM", "Manela", "For You",

"Performance" or "Defendants"), by and through their attorneys, Cullen and Dykman LLP, for

their Answer to the First Amended Complaint of Plaintiff, Shaoxing Bon Textiles Co., Ltd.

("Shoaxing" or "Plaintiff"), state as follows:

## JURISDICTION AND VENUE

        1.      Refer all questions of law to the Court at the trial of this Action and otherwise

deny the allegations contained in Paragraph 1 of the Second Amended Complaint.

        2.      Refer all questions of law to the Court at the trial of this Action and otherwise

deny the allegations contained in Paragraph 2 of the Second Amended Complaint.

        3.      Refer all questions of law to the Court at the trial of this Action and otherwise

deny the allegations contained in Paragraph 3 of the Second Amended Complaint.

## THE PARTIES

4. Refer all questions of law to the Court at the trial of this Action and otherwise deny the allegations contained in Paragraph 4 of the Second Amended Complaint.

5. Refer all questions of law to the Court at the trial of this Action, admit that 4-U is a Delaware Limited Liability Company and otherwise deny the allegations contained in Paragraph 5 of the Second Amended Complaint

6. Refer all questions of law to the Court at the trial of this Action, admit that Weiss lives in Livingston, New Jersey, and otherwise deny the allegations contained in Paragraph 6 of the Second Amended Complaint.

7. Deny the allegations contained in Paragraph 7 of the Second Amended Complaint.

8. Refer all questions of law to the Court at the trial of this action and otherwise deny the allegations contained in Paragraph 8 of the Second Amended Complaint.

9. Refer all questions of law to the Court at the trial of this action and otherwise deny the allegations contained in Paragraph 9 of the Second Amended Complaint.

10. Deny the allegations contained in Paragraph 10 of the Second Amended Complaint.

11. Refer all questions of law to the Court at the trial of this Action, refer this Court to the described hearing testimony for its content, context and information, and otherwise deny the allegations contained in Paragraph 11 of the Second Amended Complaint.

12. Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 12 of the Second Amended Complaint.

13.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 13 of the Second Amended Complaint.

14.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 14 of the Second Amended Complaint.

15.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 15 of the Second Amended Complaint.

16.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 16 of the Second Amended Complaint.

17.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 17 of the Second Amended Complaint.

18.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 18 of the Second Amended Complaint.

19.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 19 of the Second Amended Complaint.

20.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 20 of the Second Amended Complaint.

21.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 21 of the Second Amended Complaint.

22.     Refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 22 of the Second Amended Complaint.

## ANSWERING THE FIRST CAUSE OF ACTION
(Breach of Contract)

23.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 22 of the Second Amended Complaint as if fully set forth herein.

24.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 24 of the Second Amended Complaint.

25.     Deny the allegations contained in Paragraph 25 of the First Amended Complaint.

26.     Refer the Court to the documents referred to in Paragraph 26 for their content, context and information and otherwise deny the allegations contained in Paragraph 26 of the Second Amended Complaint.

27.     Refer the Court to the documents referred to in Paragraph 27 for their content, context and information and otherwise deny the allegations contained in Paragraph 27 of the Second Amended Complaint.

28.     Refer the Court to the documents described in Paragraph 28 for their content, context and information and otherwise, deny the allegations contained in Paragraph 28 of the Second Amended Complaint.

29.     Refer the Court to the documents described in Paragraph 29 for their content, context and information and otherwise, deny the allegations contained in Paragraph 29 of the Second Amended Complaint.

30.     Refer the Court to the documents described in Paragraph 30 for their content, context and information and otherwise, deny the allegations contained in Paragraph 30 of the Second Amended Complaint.

31.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 31 of the Second Amended Complaint.

32.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 32 of the Second Amended Complaint.

33.    Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 33 of the Second Amended Complaint.

34.    Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 34 of the Second Amended Complaint.

35.    Admit that Defendants attempted to market/sell the at issue garments, however, was unable to because of the poor quality of the garments, refer all questions of law to the Court at the trial of this Action, and otherwise deny the allegations contained in Paragraph 35 of the Second Amended Complaint.

36.    Refer the Court to the documents described in Paragraph 36 and each subpart thereto for their content, context and information, refer all questions of law to the Court at the trial of this Action and otherwise deny the allegations contained in Paragraph 36 of the Second Amended Complaint.

37.    Refer all questions of law to the Court at the trial of this Action and otherwise deny the allegations contained in Paragraph 37 of the Second Amended Complaint.

38.    Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 38 of the Second Amended Complaint.

39.    Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 39 of the Second Amended Complaint.

40.    Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 40 of the Second Amended Complaint.

## ANSWERING THE SECOND CAUSE OF ACTION
(Account Stated)

41.    Defendants repeat and reaffirm their responses to each Paragraph 1 through 40 of the Second Amended Complaint as if fully set forth herein.

42.     Deny the allegations contained in Paragraph 42 of the Second Amended Complaint.

43.     Deny the allegations contained in Paragraph 43 of the Second Amended Complaint.

44.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 44 of the Second Amended Complaint.

45.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 45 of the Second Amended Complaint.

## ANSWERING THE THIRD CAUSE OF ACTION
### (Quantum Meruit)

46.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 45 of the Second Amended Complaint as if fully set forth herein.

47.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 47 of the Second Amended Complaint.

48.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 48 of the Second Amended Complaint.

49.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 49 of the Second Amended Complaint.

50.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 50 of the Second Amended Complaint.

## ANSWERING THE FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

51.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 50 of the Second Amended Complaint as if fully set forth herein.

52.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 52 of the Second Amended Complaint.

53.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 53 of the Second Amended Complaint.

## ANSWERING THE FIFTH CAUSE OF ACTION
### (Promissory Estoppel)

54.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 53 of the Second Amended Complaint as if fully set forth herein.

55.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 55 of the Second Amended Complaint.

56.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 56 of the Second Amended Complaint.

57.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 57 of the Second Amended Complaint.

58.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 58 of the Second Amended Complaint.

59.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 59 of the Second Amended Complaint.

60.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 60 of the Second Amended Complaint.

## ANSWERING THE SIXTH CAUSE OF ACTION
### (Fraud)

61.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 61 of the Second Amended Complaint as if fully set forth herein.

62.     Admit the allegations contained in Paragraph 62 of the Second Amended Complaint.

63.     Deny the allegations contained in Paragraph 63 of the Second Amended Complaint.

64.     Admit that 4-U at one time conducted business with T.J. Maxx and due to Plaintiff's breach of contract, T.J. Maxx refused to purchase the defective goods 4-U received from Plaintiff and that 4-U's business has dramatically declined and otherwise deny the allegations contained in Paragraph 64 of the Second Amended Complaint.

65.     Denies knowledge or information as to the accuracy of the information contained in Paragraph 65 of the First Amended Complaint and otherwise deny the allegations contained in Paragraph 45 of the Second Amended Complaint.

66.     Deny the allegations contained in Paragraph 66 of the Second Amended Complaint.

67.     Refer the Court to the documents referred to in Paragraph 67 for their content, context and information and otherwise deny the allegations contained in Paragraph 67 of the Second Amended Complaint.

68.     Deny the allegations contained in Paragraph 68 of the Second Amended Complaint.

69.     Deny knowledge or information as to the state of mind of Tang and otherwise, deny the allegations contained in Paragraph 69 of the Second Amended Complaint.

70.     Deny the allegations contained in Paragraph 70 of the Second Amended Complaint.

71.     Deny the allegations contained in Paragraph 71 of the Second Amended Complaint.

72.     Deny the allegations contained in Paragraph 72 of the Second Amended Complaint.

73.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 73 of the Second Amended Complaint.

## ANSWERING THE SEVENTH CAUSE OF ACTION
(Constructive Trust)

74.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 73 of the Second Amended Complaint as if fully set forth herein.

75.     Admit that 4-U is in possession of a portion of the defective merchandise and otherwise deny the allegations contained in Paragraph 75 of the Second Amended Complaint.

76.     Admit that Defendants are attempting to sell the merchandise and otherwise deny the allegations contained in Paragraph 76 of the Second Amended Complaint.

77.     Admit that Defendants have tried to sell the merchandise and have been unsuccessful due to the poor quality of the merchandise and that merchandise is stored in a warehouse in California and otherwise, deny the allegations contained in Paragraph 77 of the Second Amended Complaint.

78.     Refer the Court to the documents referenced in Paragraph 78 of the Second Amended Complaint for their content, context and information and otherwise deny the allegations contained in Paragraph 78 of the Second Amended Complaint.

79.     Refer the Court to the documents referenced in Paragraph 78 of the Second Amended Complaint for their content, context and information and otherwise deny the allegations contained in Paragraph 78 of the Second Amended Complaint.

80. Refer the Court to the documents referenced in Paragraph 80 of the Second Amended Complaint for their content, context and information and otherwise deny the allegations contained in Paragraph 80 of the Second Amended Complaint.

81. Refer the Court to the documents referenced in Paragraph 81 of the Second Amended Complaint for their content, context and information and otherwise deny the allegations contained in Paragraph 81 of the Second Amended Complaint.

82. Deny the allegations contained in Paragraph 82 of the Second Amended Complaint.

83. Deny the allegations contained in Paragraph 83 of the Second Amended Complaint.

84. Deny the allegations contained in Paragraph 84 of the Second Amended Complaint.

85. Deny the allegations contained in Paragraph 85 of the Second Amended Complaint.

86. Deny the allegations contained in Paragraph 86 of the Second Amended Complaint.

87. Deny the allegations contained in Paragraph 87 of the Second Amended Complaint.

88. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 88 of the Second Amended Complaint.

## ANSWERING THE EIGHTH CAUSE OF ACTION
(Fraudulent Conveyance)

89. Defendants repeat and reaffirm their responses to each Paragraph 1 through 88 of the Second Amended Complaint as if fully set forth herein.

90.     Deny the allegations contained in Paragraph 90 of the Second Amended Complaint.

91.     Deny the allegations contained in Paragraph 91 of the Second Amended Complaint.

92.     Deny the allegations contained in Paragraph 92 of the Second Amended Complaint.

93.     Deny the allegations contained in Paragraph 93 and each subpart thereto of the First Amended Complaint.

94.     Deny the allegations contained in Paragraph 94 of the Second Amended Complaint.

95.     Deny the allegations contained in Paragraph 95 of the Second Amended Complaint.

96.     Refer the Court to the documents referred to in Paragraph 96 of the Second Amended Complaint and otherwise, deny the allegations contained in Paragraph 96 of the Second Amended Complaint.

97.     Refer the Court to the documents referred to in Paragraph 97 of the Second Amended Complaint and otherwise, deny the allegations contained in Paragraph 97 of the Second Amended Complaint.

98.     Deny the allegations contained in Paragraph 98 of the Second Amended Complaint.

99.     Refer the Court to the documents referred to in Paragraph 99 of the Second Amended Complaint and otherwise, deny the allegations contained in Paragraph 99 of the Second Amended Complaint.

100. Refer the Court to the documents referred to in Paragraph 100 of the Second Amended Complaint and otherwise, deny the allegations contained in Paragraph 100 of the Second Amended Complaint.

101. Deny the allegations contained in Paragraph 101 of the Second Amended Complaint.

102. Deny the allegations contained in Paragraph 102 of the Second Amended Complaint.

103. Deny the allegations contained in Paragraph 103 of the Second Amended Complaint.

104. Deny the allegations contained in Paragraph 104 of the Second Amended Complaint.

105. Deny the allegations contained in Paragraph 105 of the Second Amended Complaint.

106. Deny the allegations contained in Paragraph 106 of the Second Amended Complaint.

107. Admit the allegations contained in Paragraph 107 of the Second Amended Complaint.

108. Deny the allegations contained in Paragraph 108 of the Second Amended Complaint.

109. Deny the allegations contained in Paragraph 109 of the Second Amended Complaint.

110. Admit the allegations contained in Paragraph 110 of the Second Amended Complaint.

111.     Deny the allegations contained in Paragraph 111 of the Second Amended Complaint.

112.     Deny the allegations contained in Paragraph 112 of the Second Amended Complaint.

113.     Deny the allegations contained in Paragraph 113 of the Second Amended Complaint.

114.     Deny the allegations contained in Paragraph 114 of the Second Amended Complaint.

115.     Deny the allegations contained in Paragraph 115 of the Second Amended Complaint.

116.     Deny the allegations contained in Paragraph 116 of the Second Amended Complaint.

117.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 117 of the Second Amended Complaint.

118.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 118 of the Second Amended Complaint.

## ANSWERING THE NINTH CAUSE OF ACTION
### (Fraudulent Conveyance)

119.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 118 of the Second Amended Complaint as if fully set forth herein.

120.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 120 of the Second Amended Complaint.

121.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 121 of the Second Amended Complaint.

122.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 122 of the Second Amended Complaint.

## ANSWERING THE TENTH CAUSE OF ACTION
(Fraudulent Conveyance)

123.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 122 of the Second Amended Complaint as if fully set forth herein.

124.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 124 of the Second Amended Complaint.

125.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 125 of the Second Amended Complaint.

126.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 126 of the Second Amended Complaint.

## ANSWERING THE ELEVENTH CAUSE OF ACTION
(Fraudulent Conveyance)

127.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 126 of the Second Amended Complaint as if fully set forth herein.

128.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 128 of the Second Amended Complaint.

129.     Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 129 of the Second Amended Complaint.

## ANSWERING THE TWELFTH CAUSE OF ACTION
(Fraudulent Conveyance)

130.     Defendants repeat and reaffirm their responses to each Paragraph 1 through 130 of the Second Amended Complaint as if fully set forth herein.

131.   Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 131 of the Second Amended Complaint.

## ANSWERING THE THIRTEENTH CAUSE OF ACTION
(Piercing Corporate Veil)

132.   Defendants repeat and reaffirm their responses to each Paragraph 1 through 31 of the Second Amended Complaint as if fully set forth herein.

133.   Deny the allegations contained in Paragraph 133 of the Second Amended Complaint.

134.   Deny the allegations contained in Paragraph 134 of the Second Amended Complaint.

135.   Deny the allegations contained in Paragraph 133 of the Second Amended Complaint.

136.   Deny the allegations contained in Paragraph 133 of the Second Amended Complaint.

137.   Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 131 of the Second Amended Complaint.

138.   Deny the allegations contained in Paragraph 138 of the Second Amended Complaint.

139.   Deny the allegations contained in Paragraph 139 of the Second Amended Complaint.

140.   Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 140 of the Second Amended Complaint.

141.   Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 131 of the Second Amended Complaint.

142. Admit the allegations contained in Paragraph 142 of the Second Amended Complaint.

143. Deny the allegations contained in Paragraph 143 of the Second Amended Complaint.

144. Deny the allegations contained in Paragraph 143 of the Second Amended Complaint.

145. Deny the allegations contained in Paragraph 144 of the Second Amended Complaint.

146. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 146 of the Second Amended Complaint.

147. Deny the allegations contained in Paragraph 147 of the Second Amended Complaint.

148. Deny the allegations contained in Paragraph 148 of the Second Amended Complaint.

149. Deny the allegations contained in Paragraph 149 of the Second Amended complaint.

150. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 150 of the Second Amended Complaint.

151. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 151 of the Second Amended Complaint.

152. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 152 of the Second Amended Complaint.

153. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 153 of the Second Amended Complaint.

154. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 154 of the Second Amended Complaint.

155. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 155 of the Second Amended Complaint.

156. Refer all questions of law to the Court at the trial of this Action and otherwise, deny the allegations contained in Paragraph 156 of the Second Amended Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

157. The Second Amended Complaint fails to state a claim upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

158. The Second Amended Complaint is barred by Plaintiff's material breaches of, and failure to comply with its own statutory, regulatory, contractual and other legally binding obligations.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

159. The Second Amended Complaint is barred by the doctrines of waiver, ratification, estoppel and/or laches.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

160. The Second Amended Complaint is barred, in whole or in part, by the doctrine of unclean hands.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

161.    The Second Amended Complaint is barred, in whole or in part, by Plaintiff's fraudulent and otherwise wrongful actions and inactions.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

162.    Plaintiff has failed to mitigate its alleged damages.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

163.    The Second Amended Complaint fails to state a claim against Defendants because no act by any Defendant was the proximate cause of harm to Plaintiff.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

164.    The Second Amended Complaint is barred, in whole or in part, as a result of Plaintiff's failure to perform.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

165.    The Second Amended Complaint fails to state or allege fraud with particularity with respect to any Defendant as required by Fed. R. Civ. P. 9(b).

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

166.    The documentary evidence mandates that the relief sought in this Action be denied and the Second Amended Complaint dismissed.

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

167.    The Second Amended Complaint should be dismissed because Plaintiff has not suffered any damages.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

168.    The Second Amended Complaint is barred in whole or in part because Plaintiff's claims are not ripe.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

169.    The Second Amended Complaint is barred in whole or in part by the doctrine of accord and satisfaction.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

170.    The Second Amended Complaint fails to plead the causes of action against Defendants with the required particularity.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

171.    The Second Amended Complaint fails to plead any basis that defendants Howard Weiss and Abe Manela owed a duty to Plaintiff.

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

172.    Plaintiff lacks privity with Defendants, HOWARD WEISS, SGM LEASING CORP., also sued herein as SGM CORP., ABE MANELA, FOR YOU APPAREL LLC, and/ or PERFORMANCE GROUP USA, Inc. in that said defendants have never entered into any contract, express or implied with Plaintiff.

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

173.    Plaintiff does not have standing to bring the alleged causes of action because no contractual obligation exists between defendants HOWARD WEISS, SGM LEASING CORP., also sued herein as SGM CORP., ABE MANELA, FOR YOU APPAREL LLC and/or PERFORMANCE GROUP USA, INC. and Plaintiff.

## AS AND FOR A EIGHTEENTH AFFIRMATIVE DEFENSE

174.    Defendants, HOWARD WEISS and ABE MANELA are shielded from any and all alleged personal liability, obligation and/or damages by the Delaware Limited Liability Company Act.

### AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

175.    Defendant, HOWARD WEISS and ABE MANELA are shielded from any and all alleged personal liability, obligation and/or damages by the New York Limited Liability Company Law and the New York Business and Corporations Law as well as applicable Connecticut law.

### AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

176.    Defendants HOWARD WEISS and ABE MANELA are shielded from any and all alleged personal liability, obligation and/or damages by virtue of the fact that any and all acts were performed by them as a member of a valid, existing limited liability company which shields its employees, officers and members from any and all personal liability.

### AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE

177.    Plaintiff's claims against defendant HOWARD WEISS and ABE MANELA are frivolous and groundless, and therefore, Defendants are entitled to reimbursement of all costs and attorney's fees incurred in defending against the First Amended Complaint.

### AS AND FOR A TWENTY-SECOND AFFIRMATIVE DEFENSE

178.    The First Amended Complaint fails to plead the requisite facts and law required to warrant the granting of equitable relief.

### AS AND FOR A TWENTY-THIRD AFFIRMATIVE DEFENSE

179.    The First Amended Complaint fails to plead the requisite facts and law required to warrant the imposition of a constructive trust and promissory estoppel.

## AS AND FOR A TWENTY-FOURTH AFFIRMATIVE DEFENSE

180.    The Second Amended Complaint should be dismissed because the Plaintiff breached its express warranties that it could manufacture and deliver first quality goods in a timely manner.

## AS AND FOR A TWENTY-FIFTH AFFIRMATIVE DEFENSE

181.    The Second Amended Complaint should be dismissed because the Plaintiff breached its implied warranty of merchantability.

## AS AND FOR A TWENTY-SIXTH AFFIRMATIVE DEFENSE

182.    The Second Amended Complaint should be dismissed because the Plaintiff breached its implied warranty of fitness for a particular purpose.

## AS AND FOR A TWENTY-SEVENTH AFFIRMATIVE DEFENSE

183.    At all relevant times Defendants acted in good faith.

## AS AND FOR A TWENTY-EIGHTH AFFIRMATIVE DEFENSE

184.    Any alleged damages suffered by Plaintiff were caused in whole or in part by the culpable conduct of Plaintiff.

## AS AND FOR A TWENTY-NINTH AFFIRMATIVE DEFENSE

185.    Plaintiff is barred from recovery by the doctrine of ratification.

## AS AND FOR A THIRTIETH AFFIRMATIVE DEFENSE

186.    Plaintiff is barred from recovery as the acts complained of by Plaintiff were typical of the parties past course of dealings.

## AS AND FOR A THIRTY-FIRST AFFIRMATIVE DEFENSE

187. While denying all allegations in the Second Amended Complaint regarding liability, the damages allegedly sustained by Plaintiff, to the extent Plaintiff may be able to prove any injuries and/or damages are barred by the doctrines of set-off and recoupment.

### AS AND FOR A THIRTY-SECOND AFFIRMATIVE DEFENSE

188. Defendants did not misrepresent any facts or information to Plaintiff.

### AS AND FOR A THIRTY-THIRD AFFIRMATIVE DEFENSE

189. Plaintiff does not have standing to assert some or all of the allegations in the Second Amended Complaint inasmuch as any alleged contract or agreement was not made with Plaintiff but, rather, made with unnamed companies known as JUANGSU ORIENT RIVER KNITTING COMPANY, NEWBON INTERNATIONAL (HK) LTD and BON TEX.

### COUNTERCLAIMS

1. Defendants/counterclaim plaintiffs repeat and reallege each and every allegation set forth in the Answer, paragraphs 1 through 136 above, as if fully repeated herein.

### PARTIES

2. Upon information and belief, plaintiff/counterclaim defendant, SHAOXING BON TEXTILES CO., LTD., is a foreign corporation which regularly engages in business in the United States and, more particularly, New York.

3. Defendant/counterclaim plaintiff 4-U Performance Group LLC is a Delaware Limited Liability Company.

4. Defendant/counterclaim plaintiff Howard Weiss is an individual residing in the State of New Jersey.

5. Defendant/counterclaim plaintiff Abe Manela is an individual residing in the State of Connecticut.

6. Defendant/counterclaim plaintiff SGM Leasing Corp. is a Connecticut Corporation.

7. Defendant/counterclaim plaintiff For You Apparel LLC is a is a Connecticut Limited Liability Company.

8. Defendant/counterclaim plaintiff Performance Group USA, Inc. is a New York Corporation.

## SPECIFIC FACTS COMMON TO EACH COUNTERCLAIM

9. Defendants/counterclaim plaintiffs are engaged in the garment wholesale business meaning they purchase garments from a company who manufactures, or causes to be manufactured, garments suitable for resale to retail stores. Defendants/counterclaim plaintiffs have collectively been in the wholesale business for eighty years.

10. On or about December of 2014 Defendant/counterclaim plaintiff , Howard Weiss and a person by the name of Jason Li started discussions about going into business together to manufacture active wear as well as other products for different customers.

11. At that time Jason Li introduced Defendant/counterclaim plaintiff, Howard Weiss to Jason's "business group" - which included William Tang, the current owner of Plaintiff, Harry Qiu, and Harry's Qiu's wife. This Chinese "group" was to oversee production in China.

12. Defendant/counterclaim plaintiff , Howard Weiss then opened Defendant/counterclaim plaintiff , 4-U Performance Group LLC with the intention that the Chinese group would fund the new business, run the day to day operations and supply product with credit terms for the New York sales team to sell to customers.

13. Defendant/counterclaim plaintiff, Howard Weiss and Jason Li were to be equal partners in the new business endeavor.

14.     However, once Defendant/counterclaim plaintiff , Howard Weiss went back to China to check on the status of the business venture, it was determined that Jason Li was embezzling money and not rightfully transferring funds to Defendant/counterclaim plaintiff , 4-U Performance Group LLC.

15.     It was at this time, on or about March of 2015 where Plaintiff's owner, William Tang solicited Defendant/counterclaim plaintiff, Howard Weiss to go into a partnership. Plaintiff's owner, William Tang, specifically assured, promised and convinced Defendant/counterclaim plaintiff, Howard Weiss that William Tang – and his businesses including Plaintiff - had the connections, specifically "relationships with the factories to produce the garments at the quality level necessary for a better brand and the ability to import the product to the US in a timely period" – in China, credit, business experience, credentials and financial capability to work as head of the "Chinese office" of Howard Weiss' business endeavor.

16.     Howard Weiss made it clear to William Tang that most of the product would be sold to the "TJX Companies" (Marshalls and TJ Maxx) and that no orders were to be issued by them until the product was inventoried in the US. William Tang was also informed that the delivery dates were important to adhere to and that the garments were being imported at the risk of 4-U Performance Group.  In response, William Tang promised that the quality of the garments produced would meet the standards of a better brand in the US.

17.     Howard Weiss made also made it clear to William Tang that Wilaim Tang – and his company - would only get paid after the inventory was sold.  William Tang accepted these terms explicitly and continued his above-referenced assurances to Howard Weiss.

18.     As a result of Plaintiff's owner, William Tang's assurances and promises, Jason Li was ousted and William Tang, individually and through his various corporate entities took

control. Defendant/counterclaim plaintiff, Howard Weiss and Plaintiff's owner, William Tang developed, what Howard Weiss *thought* was a solid, confidential relationship. In fact, Howard Weiss allowed William Tang and his family lived with Howard Weiss at his home for a month.

19. As the business relationship continued William Tang – individually and as owner and officer of Plaintiff - continued to assure Defendant/counterclaim plaintiff, Howard Weiss that William Tang – and his businesses including Plaintiff - had the connection (specifically "relationships with the factories to produce the garments at the quality level necessary for a better brand and the ability to import the product to the US in a timely period" ) in China, credit, business experience, credentials and financial capability to allow the business venture to profit significantly. William Tang promised that the quality of the garments produced would meet the standards of a better brand in the U.S. and would be delivered in a timely manner.

20. Defendant/counterclaim plaintiff, Howard Weiss justifiably relied upon William Tang's promises and assurances and placed a specific, voluminous order for ladies active wear merchandise. It was very specifically explained to William Tang by Howard Weiss and Abe Manela, on numerous occasions in Spring of 2015 that (a) the merchandise was seasonable (to be specifically marketed to and usable for the end user in the Fall of 2015 season), and time was of the essence; (b) that the order was for TJ Maxx and the quality of the garments produced must meet the standards of a better brand in the U.S.; and (c) that William Tang and his company would only get paid after the inventory was sold. William Tang – individually and as owner of Plaintiff - accepted these terms explicitly and continued his above-referenced assurances to Howard Weiss.

21. Suspiciously, it was around this time, Spring of 2015, that William Tang – individually and as owner and officer of Plaintiff – began to use his alternate companies and

company names to operate business matters for his joint venture with Defendant/counterclaim plaintiff, Howard Weiss. These businesses, unbeknownst to Howard Weiss, were vehicles to perpetrate fraudulent business activities.

22. Specifically, William Tang – individually and as owner and officer of Plaintiff – began to use a host of business names - JUANGSU ORIENT RIVER KNITTING COMPANY, NEWBON INTERNATIONAL (HK) LTD, BON TEX and SHAOXING BON TEXTILES CO. LTD – all to achieve his fraudulent goals. These names are all reflected in the invoices/purchase orders of April 22, 2015, May 4, 2015 and June 5, 2015 – invoices where William Tang requested name changes.

23. Nevertheless, William Tang – individually and as owner and officer of Plaintiff and the other above-named companies - specifically agreed to and accepted the terms carefully laid out by Howard Weiss and Abe Manela that (a) the merchandise was seasonable (to be specifically marketed to and usable for the end user in the Fall of 2015 season), and time was of the essence; (b) that the order was for TJ Maxx and the quality of the garments produced must meet the standards of a better brand in the U.S.; and (c) that William Tang and his company would only get paid after the inventory was sold.

24. William Tang – individually and as owner and officer of Plaintiff and the other above-named companies – thereafter began defaulting and breaching his agreement. Delivery dates were pushed back by William Tang from July 2015 to September-October 2015 and even November-December 2015.

25. As merchandise began to be delivered, albeit untimely, it was noticed that the quality of the merchandise was not up to the standards promised. Specifically, Plaintiff's merchandise material was shoddy, stitching was showing, tearing of the stitching was occurring,

sizes were far from uniform, sizes were not up to U.S. standards and cutting was uneven and lopsided.

26.     In fact, Howard Weiss and Abe Manela shipped Plaintiff's products to TJ Maxx but merchandise was, after inspection, summarily rejected as being of poor quality and untimely for the season.  This is clearly reflected in the July 16, 2016 email from Keisha McClain, buyer at TJ Maxx.  As a result, the entire good will and brand acceptance built up between Defendants/counterclaim plaintiffs was forever lost.  The relationship was irreparable and, as a result, Defendants/counterclaim plaintiffs were damaged.

27.     As months passed and William Tang became upset with the lack of sales and confronted Howard Weiss and Abe Manela.  In response, and in good faith, Howard Weiss offered to have William Tang take the merchandise back on many occasions in 2015 and 2016. William Tang refused this offer and, therefore, failed to mitigate his damages.

28.     Around March 2016 William Tang was presented with offers from customers that wanted to pay around $4.00 per item William Tang refused this offer and, therefore, failed to mitigate his damages.

29.     The value of the garments kept decreasing as time passed and market conditions deteriorated.

30.     In July 2016 William Tang, William Tang's wife and Howard Weiss had a meeting in New York.  Howard Weiss invited William Tang and his wife to go to the warehouse in California where the shoddy merchandise was being held (at Defendant's expense) and see for themselves that the inventory was still being warehoused (William Tang initially accused Howard Weiss fully selling all of the merchandise).

31.    Defendants/counterclaim plaintiffs have incurred, and continue to incur, great expense in warehouse and storage charges for the inventory sitting in California.

32.    Defendants/counterclaim plaintiffs have incurred, and continue to incur, great expense in damage to reputation as a result of Plaintiff and William Tang's actions.

## FIRST COUNTERCLAIM

### "Breach of Express Warranties"

33.    Defendants/counterclaim plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 32, as if fully repeated herein.

34.    Plaintiff/counterclaim defendant and Defendants/counterclaim plaintiffs are merchants within the meaning of Article 2 of the Uniform Commercial Code.

35.    Plaintiff/counterclaim defendant regularly solicits business in New York County, New York and did solicit business from Defendants/counterclaim plaintiffs.

36.    At all times involved herein, Plaintiff/counterclaim defendant, its agents, servants and/or employees were fully aware of the nature of Defendants'/counterclaim plaintiffs' business; and the particular purpose for which the goods were required by Defendants/counterclaim plaintiffs, to wit, to manufacture finished ladies' garments for the ultimate resale of the goods to Defendants'/counterclaim plaintiffs' customers.

37.    In procuring business from Defendants/counterclaim plaintiffs for the goods involved herein, Plaintiff/counterclaim defendant, its agents, servants and/or employees explicitly warranted to Defendants/counterclaim plaintiffs that said garments would be of first quality, free of defects; that Plaintiff/counterclaim defendant had the ability and capacity to supply and produce the required garments; and that Plaintiff/counterclaim defendant could

timely and with first quality merchandise fulfill Defendants'/counterclaim plaintiffs' requirements.

38. Said express warranties were untrue. Specifically, Plaintiff/Counterclaim Defendants merchandise was untimely and the merchandise material was shoddy, stitching was showing, tearing of the stitching was occurring, sizes were far from uniform, sizes were not up to U.S. standards and cutting was uneven and lopsided.

39. Defendants/counterclaim plaintiffs provided appropriate and proper notice to Plaintiff/counterclaim defendant of Plaintiff's/counterclaim defendant's breach of its aforesaid warranties, but Plaintiff/counterclaim defendant failed and refused to cure said breaches.

40. By virtue of the Plaintiff's/counterclaim defendant's breach of its express warranties, Defendants/counterclaim plaintiffs have sustained damages in a sum to be proven at trial.

## SECOND COUNTERCLAIM

### "Breach of Warranty of Merchantability"

41. Defendants/counterclaim plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 40, as if fully repeated herein.

42. As a result of the aforementioned defective quality of the goods, they were not fit for the ordinary purposes for which such goods are used, and thereby, Plaintiffs breached their warranty of merchantability under which said goods were sold.

43. Specifically, Plaintiff/Counterclaim Defendants merchandise was untimely and the merchandise material was shoddy, stitching was showing, tearing of the stitching was occurring, sizes were far from uniform, sizes were not up to U.S. standards and cutting was uneven and lopsided.

44. By virtue of the Plaintiffs' breach of their warranty of merchantability, Defendants have sustained damages in a sum to be proven at trial.

## THIRD COUNTERCLAIM

### "Breach of Warranty of Fitness"

45. Defendants/counterclaim plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 44, as if fully repeated herein.

46. At all times involved herein, Plaintiff, its agents, servants and/or employees were fully aware, or should have been aware, that Defendants were relying on Plaintiff's skill and judgment in furnishing appropriate and proper goods to or on behalf of Defendants.

47. In utilizing Plaintiffs for the goods involved herein, Defendants relied upon Plaintiff's skill, judgment and representations in expecting to be furnished proper goods.

48. The goods involved herein, however, were defective in their quality, not as represented or agreed upon, and unfit for the particular purpose for which said goods were required.

49. Specifically, Plaintiff/Counterclaim Defendants merchandise was untimely and the merchandise material was shoddy, stitching was showing, tearing of the stitching was occurring, sizes were far from uniform, sizes were not up to U.S. standards and cutting was uneven and lopsided.

50. Plaintiff thereby breached its warranty of fitness for a particular purpose under which said goods were produced.

51. By virtue of the Plaintiffs' breach of their warranty of fitness, Defendants have sustained damages in a sum to be proven at trial.

# FOURTH COUNTERCLAIM

## "Breach of Contract"

52.     Defendants/counterclaim plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 51, as if fully repeated herein.

53.     At all times involved herein, a contract existed by and between plaintiff, SHAOXING BON TEXTILES CO., LTD and Defendant, 4-U PERFORMANCE GROUP LLC whereby Plaintiff promised and agreed to manufacture and timely deliver goods for the ultimate resale to Defendants' customers during the Fall of 2015 season.

54.     Defendants justifiably relied on Plaintiff's aforementioned promises.

55.     Plaintiff, its agents, servants and/or employees were fully aware, or should have been aware that said goods were to be specifically designated by Defendants for use in products specifically marketed to and usable for the end user in the Fall of 2015 season.

56.     Plaintiff, its agents, servants and/or employees were fully aware, or should have been aware, that Defendants were relying on Plaintiff's skill and judgment in furnishing appropriate and proper goods in a timely manner to or on behalf of Defendants.

57.     In utilizing Plaintiff for the goods involved herein, Defendants relied upon Plaintiff's skill, judgment and representations in expecting to be furnished proper goods in a timely manner and free from defects.

58.     The goods involved herein, however, were not timely delivered by Plaintiff and, in fact, were not delivered until well-after the time they could be utilized for the Fall 2015 season.

59.     Once the goods were delivered they were faulty, defective and no longer sellable and/or marketable. Specifically, Plaintiff/Counterclaim Defendants merchandise was untimely

and the merchandise material was shoddy, stitching was showing, tearing of the stitching was occurring, sizes were far from uniform, sizes were not up to U.S. standards and cutting was uneven and lopsided.

60.     Plaintiff thereby breached its contract with plaintiff to timely deliver goods which were free from defects.

61.     By virtue of the Plaintiffs' breach of their warranty of fitness, Defendants have sustained damages in a sum to be proven at trial including, but not limited to carrying and storage costs for goods which were untimely and defective.

## FIFTH COUNTERCLAIM

### "Fraud"

62.     Defendants/counterclaim plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 61, as if fully repeated herein.

63.     On or about March of 2015 where Plaintiff's owner, William Tang solicited Defendant/counterclaim plaintiff, Howard Weiss to go into a partnership.   Plaintiff's owner, William Tang, specifically assured, promised and convinced Defendant/counterclaim plaintiff, Howard Weiss that William Tang – and his businesses including Plaintiff - had the connections, specifically "relationships with the factories to produce the garments at the quality level necessary for a better brand and the ability to import the product to the US in a timely period" – in China, credit, business experience, credentials and financial capability to work as head of the "Chinese office" of Howard Weiss' business endeavor. Said assurances were false.  At the time Plaintiff/counterclaim defendant's principal, William Tang, individually and on behalf of plaintiff, SHAOXING BON TEXTILES CO., LTD., made such assurances, he fully knew the assurances to be false.  Plaintiff/counterclaim defendant's principal, William Tang, individually

and on behalf of plaintiff, SHAOXING BON TEXTILES CO., LTD., made such false assurances to Defendants/counterclaim plaintiffs to fraudulently induce Defendants/counterclaim plaintiffs to enter into contracts with Plaintiff/counterclaim defendant.

64.     Howard Weiss made it clear to William Tang that most of the product would be sold to the "TJX Companies" (Marshalls and TJ Maxx) and that no orders were to be issued by them until the product was inventoried in the US. William Tang was also informed that the delivery dates were important to adhere to and that the garments were being imported at the risk of 4-U Performance Group. In response, William Tang promised that the quality of the garments produced would meet the standards of a better brand in the US.

65.     Howard Weiss made also made it clear to William Tang that Wilaim Tang – and his company - would only get paid after the inventory was sold. William Tang accepted these terms explicitly and continued his above-referenced assurances to Howard Weiss.

66.     As a result of Plaintiff's owner, William Tang's assurances and promises, Jason Li was ousted and William Tang, individually and through his various corporate entities took control. Defendant/counterclaim plaintiff, Howard Weiss and Plaintiff's owner, William Tang developed, what Howard Weiss *thought* was a solid, confidential relationship. In fact, Howard Weiss allowed William Tang and his family lived with Howard Weiss at his home for a month.

67.     As the business relationship continued William Tang – individually and as owner and officer of Plaintiff - continued to assure Defendant/counterclaim plaintiff, Howard Weiss that William Tang – and his businesses including Plaintiff - had the connection (specifically "relationships with the factories to produce the garments at the quality level necessary for a better brand and the ability to import the product to the US in a timely period" ) in China, credit, business experience, credentials and financial capability to allow the business venture to profit

significantly. William Tang promised that the quality of the garments produced would meet the standards of a better brand in the U.S. and would be delivered in a timely manner. At the time Plaintiff/counterclaim defendant's principal, William Tang, individually and on behalf of plaintiff, SHAOXING BON TEXTILES CO., LTD., made such assurances and promises, he fully knew the assurances to be false. Plaintiff/counterclaim defendant's principal, William Tang, individually and on behalf of plaintiff, SHAOXING BON TEXTILES CO., LTD., made such false assurances to Defendants/counterclaim plaintiffs to fraudulently induce Defendants/counterclaim plaintiffs to enter into contracts with Plaintiff/counterclaim defendant.

68.     Defendant/counterclaim plaintiff, Howard Weiss justifiably relied upon William Tang's promises and assurances and placed a specific, voluminous order for ladies active wear merchandise. It was very specifically explained to William Tang by Howard Weiss and Abe Manela, on numerous occasions in Spring of 2015 that (a) the merchandise was seasonable (to be specifically marketed to and usable for the end user in the Fall of 2015 season), and time was of the essence; (b) that the order was for TJ Maxx and the quality of the garments produced must meet the standards of a better brand in the U.S.; and (c) that William Tang and his company would only get paid after the inventory was sold. William Tang – individually and as owner of Plaintiff - accepted these terms explicitly and continued his above-referenced assurances to Howard Weiss.

69.     Suspiciously, it was around this time, Spring of 2015, that William Tang – individually and as owner and officer of Plaintiff – began to use his alternate companies and company names to operate business matters for his joint venture with Defendant/counterclaim plaintiff, Howard Weiss. These businesses, unbeknownst to Howard Weiss, were vehicles to perpetrate fraudulent business activities.

70. Specifically, William Tang – individually and as owner and officer of Plaintiff – began to use a host of business names - JUANGSU ORIENT RIVER KNITTING COMPANY, NEWBON INTERNATIONAL (HK) LTD, BON TEX and SHAOXING BON TEXTILES CO. LTD – all to achieve his fraudulent goals. These names are all reflected in the invoices/purchase orders of April 22, 2015, May 4, 2015 and June 5, 2015 – invoices where William Tang requested name changes.

71. Nevertheless, William Tang – individually and as owner and officer of Plaintiff and the other above-named companies - specifically agreed to and accepted the terms carefully laid out by Howard Weiss and Abe Manela that (a) the merchandise was seasonable (to be specifically marketed to and usable for the end user in the Fall of 2015 season), and time was of the essence; (b) that the order was for TJ Maxx and the quality of the garments produced must meet the standards of a better brand in the U.S.; and (c) that William Tang and his company would only get paid after the inventory was sold. At the time Plaintiff/counterclaim defendant's principal, William Tang, individually and on behalf of plaintiff, SHAOXING BON TEXTILES CO., LTD., made this agreement, he fully knew he lacked the ability to forfill his promises and assurances inasmuch as he knew them to be false. Plaintiff/counterclaim defendant's principal, William Tang, individually and on behalf of plaintiff, SHAOXING BON TEXTILES CO., LTD., made such false promises and assurances to Defendants/counterclaim plaintiffs to fraudulently induce Defendants/counterclaim plaintiffs to enter into contracts with Plaintiff/counterclaim defendant and to profit William Tang and his companies.

72. William Tang – individually and as owner and officer of Plaintiff and the other above-named companies – thereafter began defaulting and breaching his agreement. Delivery

dates were pushed back by William Tang from July 2015 to September-October 2015 and even November-December 2015.

73.     As merchandise began to be delivered, albeit untimely, it was noticed that the quality of the merchandise was not up to the standards promised. Specifically, Plaintiff's merchandise material was shoddy, stitching was showing, tearing of the stitching was occurring, sizes were far from uniform, sizes were not up to U.S. standards and cutting was uneven and lopsided.

74.     In fact, Howard Weiss and Abe Manela shipped Plaintiff's products to TJ Maxx but merchandise was, after inspection, summarily rejected as being of poor quality and untimely for the season. This is clearly reflected in the July 16, 2016 email from Keisha McClain, buyer at TJ Maxx. As a result, the entire good will and brand acceptance built up between Defendants/counterclaim plaintiffs was forever lost. The relationship was irreparable and, as a result, Defendants/counterclaim plaintiffs were damaged.

75.     As months passed and William Tang became upset with the lack of sales and confronted Howard Weiss and Abe Manela. In response, and in good faith, Howard Weiss offered to have William Tang take the merchandise back on many occasions in 2015 and 2016. William Tang refused this offer and, therefore, failed to mitigate his damages.

76.     Around March 2016 William Tang was presented with offers from customers that wanted to pay around $4.00 per item William Tang refused this offer and, therefore, failed to mitigate his damages.

77.     The value of the garments kept decreasing as time passed and market conditions deteriorated.

78. In July 2016 William Tang, William Tang's wife and Howard Weiss had a meeting in New York. Howard Weiss invited William Tang and his wife to go to the warehouse in California where the shoddy merchandise was being held (at Defendant's expense) and see for themselves that the inventory was still being warehoused (William Tang initially accused Howard Weiss fully selling all of the merchandise).

79. Defendants/counterclaim plaintiffs have incurred, and continue to incur, great expense in warehouse and storage charges for the inventory sitting in California.

80. Defendants/counterclaim plaintiffs have incurred, and continue to incur, great expense in damage to reputation as a result of Plaintiff and William Tang's actions.

81. The above-described false promises, assurances and intentional deceptions by William Tang, individually and on behalf of Plaintiff/counterclaim defendant, SHAOXING BON TEXTILES CO., LTD., constituted fraud.

82. By virtue of the Plaintiff/counterclaim defendant's fraud, Defendants/counterclaim plaintiffs have sustained damages in a sum to be proven at trial.

WHEREFORE, Defendants, 4-U PERFORMANCE GROUP LLC, HOWARD WEISS, SGM LEASING CORP., also sued herein as SGM CORP., ABE MANELA, FOR YOU APPAREL and PERFORMANCE GROUP USA, INC. respectfully request that the Court enter judgment as follows:

1. Dismissing the Second Amended Complaint in its entirety.

2. On the First Counterclaim in a sum to be proven at trial.

3. On the Second Counterclaim in a sum to be proven at trial.

4. On the Third Counterclaim in a sum to be proven at trial.

5. On the Fourth Counterclaim in a sum to be proven at trial.

6.   On the Fifth Counterclaim in a sum to be proven at trial.

7.   Awarding Defendants costs, interests, expenses and attorney's fees.

8.   Granting such other and further relief as to the court may seem just and equitable.

Dated: Garden City, New York
       January 6, 2017

                                    CULLEN AND DYKMAN LLP

                        By:         _____
                                    Andrew P. Nitkewicz (AN9927)
                                    *Attorneys for Defendants 4-U*
                                    *PERFORMANCE GROUP LLC, HOWARD*
                                    *WEISS, SGM LEASING CORP., also sued*
                                    *herein as SGM CORP., ABE MANELA,*
                                    *FOR YOU APPAREL LLC and Performance*
                                    *Group USA, Inc.*
                                    100 Quentin Roosevelt Boulevard
                                    Garden City, New York 11530
                                    (516) 357-3700

TO:   Schlacter & Associates
      Attorneys for Plaintiff
      450 Seventh Avenue, Suite 1308
      New York, New York  10123
      212-695-2000